IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| ELIZABETH NOETZEL, | ) | CIVIL NO. 15-00310 SOM/KJM |
| | ) | |
| Plaintiff, | ) | ORDER REJECTING THE |
| | ) | MAGISTRATE JUDGE'S FINDINGS |
| vs. | ) | AND RECOMMENDATION TO GRANT |
| | ) | ELIZABETH NOETZEL'S MOTION TO |
| HAWAII MEDICAL SERVICE | ) | REMAND |
| ASSOCIATION, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |

**ORDER REJECTING THE MAGISTRATE JUDGE'S FINDINGS AND
RECOMMENDATION TO GRANT ELIZABETH NOETZEL'S MOTION TO REMAND**

**I.       INTRODUCTION.**

Defendant Hawaii Medical Service Association objects to the Magistrate Judge's Findings & Recommendation ("F & R") to Grant Plaintiff Elizabeth Noetzel's Motion to Remand.

Noetzel initially asked a state court to determine that HMSA, which had paid Noetzel's medical bills pursuant to a health plan, was not entitled to be reimbursed from a settlement Noetzel reached with a third-party tortfeasor.  HMSA removed the action to federal court on the ground that Noetzel's state court action was "completely preempted" by § 502(a) of the Employee Retirement Income Security Act of 1974.  The F & R, concluding that HMSA had failed to establish that Noetzel's claim was completely preempted, recommended that the action be remanded.

This court rejects the F & R and denies Noetzel's Motion to Remand.

II.        **FACTUAL BACKGROUND.**

On September 2, 2010, Noetzel was in a motor vehicle accident involving a large truck owned by Kuwayne Trucking Inc. See ECF No. 1-2, PageID # 12.  Noetzel suffered severe head, neck, and back injuries in the accident.  See id.

HMSA provided Noetzel with medical insurance coverage for these injuries pursuant to its Preferred Provider Plan.  See ECF No. 1, PageID # 3; ECF No. 1-2, PageID # 13.  The Plan is an employee welfare benefit plan provided to Noetzel by her employer pursuant to ERISA.  See ECF No. 1, PageID # 3.

Noetzel filed a motor vehicle tort action in Hawaii state court against Kuwayne Trucking and the employee who was operating the truck that struck her.  See ECF No. 1-2, PageID # 13.  The parties entered into a confidential settlement agreement.  See id.  Upon learning of the settlement, HMSA notified Noetzel that it intended to seek reimbursement from the settlement for the health benefits provided to her, pursuant to the reimbursement terms of its Plan.  See id., PageID #s 13-14.  According to the reimbursement terms in the Plan's "Guide to Benefits," HMSA

> shall have a right to be reimbursed for any
> benefits we provide, from any recovery
> received from or on behalf of any third party
> or other source of recovery in connection
> with the injury or illness, including, but
> not limited to, proceeds from any:
>
> Settlement, judgment, or award;

2

. . . .

We shall have a first lien on such recovery
proceeds, up to the amount of total benefits
we pay or have paid related to the injury or
illness.  You must reimburse us for any
benefits paid, even if the recovery proceeds
obtained (by settlement, judgment, award,
insurance proceeds, or other payment):

Do not specifically include medical expenses;

Are stated to be for general damages only;

Are for less than the actual loss or alleged
loss suffered by you due to the injury or
illness;

Are obtained on your behalf by any person or
entity, including your estate, legal
representative, parent, or attorney;

Are without any admission of liability,
fault, or causation by the third party or
payor.

Our lien will attach to and follow such
recovery proceeds even if you distribute or
allow the proceeds to be distributed to
another person or entity.  Our lien may be
filed with the court, any third party or
other source of recovery money, or any entity
or person receiving payment regarding the
illness or injury.

ECF No. 10-2, PageID # 158.

On July 2, 2015, Noetzel filed a Petition for

Determination of Validity of Claim of Lien of HMSA in state

court.  See ECF No. 1-2.  The Petition sought a determination by

the state court, pursuant to Haw. Rev. Stat. §§ 431:13-1-3(a)(10)

and 663-10, that HMSA was not entitled to reimbursement from the

settlement proceeds because HMSA's lien "seeks reimbursement from

3

settlement funds that do not correspond to special damages recovered in the subject settlement." See id., PageID # 15. Noetzel notes that Haw. Rev. Stat. § 663-10 refers to recovery by an insurer like HMSA of benefits paid equivalent to the special damages in a settlement. See id., PageID # 14.

HMSA removed the action to federal court on August 7, 2015, asserting that the court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1331, because Noetzel's state law claims are "completely preempted" by ERISA § 502(a), 29 U.S.C. § 1132(a). See ECF No. 1, PageID #s 3-4.

In response, Noetzel filed a Motion to Remand on August 24, 2015, in which she argued that her state law action is not completely preempted by ERISA, and that, therefore, the court lacks federal subject matter jurisdiction over the matter. See ECF No. 6.

In the F & R, the Magistrate Judge made findings and recommended that the Motion to Remand be granted. See ECF No. 16, PageID # 236. The F & R concluded that, under the two-part test set forth by the United States Supreme Court in Aetna Health Inc. v. Davila, 542 U.S. 200, 210 (2004), Noetzel's action was not completely preempted by ERISA § 502(a). See ECF No. 16, PageID #s 238-43. The F & R relied on Wurtz v. Rawlings Co., LLC, 761 F.3d 232 (2d Cir. 2013), in holding that HMSA had failed to meet the first prong of the Davila test, which asks whether

4

the "individual, at some point in time, could have brought the
claim under ERISA § 502(a)." See ECF No. 16, PageID #s 241-43.
Because the F & R found this first prong dispositive, it did not
address the second Davila prong, which requires a court to
consider whether an independent legal duty is implicated by a
defendant's actions. See id., PageID #s 238-43. See Davila, 542
U.S. at 210.

HMSA objects to the F & R. See ECF No. 17.

**III.     Standard of Review.**

"This Court treats a motion to remand as a dispositive
motion, requiring the issuance of a findings and recommendation
by the magistrate judge." PSC Indus. Outsourcing, LP v.
Burlington Ins. Co., Civ. No. 10-00751 ACK-BMK, 2011 WL 1793333,
at *3 (D. Haw. May 10, 2011) (citing Keown v. Tudor Ins. Co., 621
F. Supp. 2d 1025, 1029 (D. Haw. 2008)); see also Eggs 'N Things
Int'l Holdings Pte. Ltd. v. ENT Holdings LLC, No. CIV.
11-00626LEK-KSC, 2012 WL 665038, at *1 (D. Haw. Feb. 29, 2012).

Congress has empowered magistrate judges, upon referral
of dispositive pretrial motions by district judges, to conduct
hearings and issue findings and recommendations regarding
dispositive pretrial motions. See 28 U.S.C. § 636(b)(1)(B); see
also Fed. R. Civ. P. 72(b) (promulgating rule).

A district judge reviews a magistrate judge's findings
and recommendation prior to ruling on the motion, and may accept,

reject, or modify, in whole or in part, the findings and recommendation made by the magistrate judge.  Fed. R. Civ. P. 72(b).  If a party timely objects to portions of the findings and recommendation, the district judge reviews those portions of the findings and recommendation de novo.  Fed. R. Civ. P. 72(b)(3); Local Rule 74.2.  The district judge may consider the record developed before the magistrate judge.  Local Rule 74.2.  The district judge also has discretion to receive further evidence. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); Local Rule 74.2; see also United States v. Raddatz, 447 U.S. 667, 676 (1980) (district judge has wide discretion in deciding whether to allow new evidence).

The de novo standard requires the district court to consider a matter anew and arrive at its own independent conclusions, but a de novo hearing is not ordinarily required. United States v. Remsing, 874 F.2d 614, 617 (9th Cir. 1989); United States v. Boulware, 350 F. Supp. 2d 837, 841 (D. Haw. 2004); Local Rule 74.2.

The district judge may accept the portions of the findings and recommendation to which the parties have not objected as long as it is satisfied that there is no clear error on the face of the record.  See United States v. Bright, Civ. No. 07-00311 ACK/KSC, 2009 WL 5064355, at *3 (D. Haw. Dec. 23, 2009); Stow v. Murashige, 288 F. Supp. 2d 1122, 1127 (D. Haw. 2003);

Fed. R. Civ. P. 72(b) advisory committee's note.

IV.       **ANALYSIS.**

  **A.   Complete Preemption Under ERISA § 502(a).**

   Noetzel seeks to have this action remanded to state court for lack of subject matter jurisdiction.  <u>See</u> ECF No. 6. Noetzel argues that this court lacks subject matter jurisdiction because no federal question appears on the face of Noetzel's petition, and the petition is not completely preempted by ERISA § 502(a).  <u>See id.</u>, PageID # 96.

   Removal of a matter from state to federal court is proper when the federal court has original jurisdiction; that is, the removed claims must "aris[e] under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.  An action "arises under" federal law when "federal law creates the cause of action."  <u>Merrell Dow Pharm. Inc. v. Thompson</u>, 478 U.S. 804, 808 (1986).

   The well-pleaded complaint rule "provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint."  <u>Hunter v. Philip Morris USA</u>, 582 F.3d 1039, 1042 (9th Cir. 2009); <u>see also</u> <u>Caterpillar Inc. v. Williams</u>, 482 U.S. 386, 392 (1987).  If the allegations stated on the face of a well-pleaded complaint present only state law claims, removal is generally improper.

   "There is an exception, however, to the well-pleaded

complaint rule.  '[W]hen a federal statute wholly displaces the state-law cause of action through complete pre-emption,' the state claim can be removed." Davila, 542 U.S. at 207; see also Marin Gen. Hosp. v. Modesto & Empire Traction Co., 581 F.3d 941, 945 (9th Cir. 2009) ("Complete preemption removal is an exception to the otherwise applicable rule that a 'plaintiff is ordinarily entitled to remain in state court so long as its complaint does not, on its face, affirmatively allege a federal claim.'" (quoting Pascack Valley Hosp. v. Local 464A UFCW Welfare Reimbursement Plan, 388 F.3d 393, 398 (3d Cir. 2004))).  "This is so because '[w]hen the federal statute completely pre-empts the state-law cause of action, a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law." Davila, 542 U.S. at 208.

The term "complete preemption" is actually a misnomer in the § 502(a) context.  "Complete preemption under § 502(a) is 'really a jurisdictional rather than a preemption doctrine, [as it] confers exclusive federal jurisdiction in certain instances where Congress intended the scope of a federal law to be so broad as to entirely replace any state-law claim.'" Marin Gen. Hosp., 581 F.3d at 945 (quoting Franciscan Skemp Healthcare, Inc. v. Cent. States Joint Bd. Health & Welfare Trust Fund, 538 F.3d 594, 596 (7th Cir. 2008)).

ERISA § 502(a), 29 U.S.C. § 1132(a) "sets forth a

comprehensive civil enforcement scheme that completely preempts state-law causes of action within the scope of these civil enforcement provisions." Fossen v. Blue Cross & Blue Shield of Montana, Inc., 660 F.3d 1102, 1107 (9th Cir. 2011) (citations, quotation marks, brackets omitted).

ERISA § 502(a)(1) provides:

A civil action may be brought--

(1) by a participant or beneficiary--

    (A)    for the relief provided for in subsection (c) of this section, or

    (B)    to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan[.]

ERISA § 502(a)(3) further authorizes a beneficiary or participant "(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan[.]" 29 U.S.C. § 1132(a)(3).

"[A]ny state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted." Davila, 542 U.S. at 209 (citing Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 54-56

9

(1987)).

In Davila, the United States Supreme Court said that a claim is completely preempted "if an individual, at some point in time, could have brought his claim under ERISA § 502(a)(1)(B), and where there is no other independent legal duty that is implicated by a defendant's actions."  542 U.S. at 210.  The plaintiffs in Davila had filed state tort claims against their respective health maintenance organizations (HMOs) alleging that they had been injured by the HMOs' decisions to deny coverage for treatment recommended by physicians.  See id. at 204.  The state law invoked by the plaintiffs imposed a duty on managed care entities to "exercise ordinary care when making health care treatment decisions."  See id. at 212.

The Supreme Court granted certiorari to determine whether the plaintiffs' causes of action were completely preempted by the broad remedial scheme of ERISA.  See id. at 204.  Applying the first prong of its test, the Davila Court held that the plaintiffs' claims fell "within the scope" of ERISA § 502(a)(1)(B) because the plaintiffs were complaining only about denials of coverage promised under the terms of ERISA-regulated employee benefit plans.  See id. at 211.  Under the second prong, the Court concluded that, in the context of the case, the duties imposed by the state law did not arise independently of ERISA or the plan terms.  See id. at 212-13.  The Court reasoned that the

HMOs' liability "derive[d] entirely from the particular rights and obligations established by the benefit plans," and that the interpretation of the plaintiffs' benefit plans therefore formed an essential part of their state law claim.  See id. at 213.

"Following Davila, [the Ninth Circuit has] distilled a two-part test for determining whether a state-law claim is completely preempted by ERISA § 502(a):  'a state-law cause of action is completely preempted if (1) an individual, at some point in time, could have brought the claim under ERISA § 502(a)(1)(B), and (2) where there is no other independent legal duty that is implicated by a defendant's actions.'"  Fossen, 660 F.3d at 1107-08 (quoting Marin Gen. Hosp., 581 F.3d at 946).

"Because this 'two-prong test . . . is in the conjunctive[,] [a] state-law cause of action is preempted by § 502(a)(1)(B) only if both prongs of the test are satisfied.'"  Fossen, 660 F.3d at 1108 (quoting Marin Gen. Hosp., 581 F.3d at 947).  Although Fossen addressed § 502(a)(1)(B), the Ninth Circuit has made it clear that the complete preemption doctrine applies to other subparts of § 502(a) as well.  660 F.3d at 1108 (quoting Metro. Life, 481 U.S. at 66).

Furthermore, the Ninth Circuit has noted that preemption under ERISA § 502(a) is not affected by the Savings Clause in ERISA § 514(b)(2)(A), 29 U.S.C. § 1144(b)(2)(A).  See, e.g., Cleghorn v. Blue Shield of California, 408 F.3d 1222, 1226

n.6 (9th Cir. 2005) ("[W]e need not decide whether [the state
law] is excepted from preemption under section 514(b)(2)(A) as a
state regulation of insurance.  Preemption under ERISA section
502(a) is not affected by that exception." (citation omitted)).
The Savings Clause provides, "Except as provided in subparagraph
(B), nothing in this subchapter shall be construed to exempt or
relieve any person from any law of any State which regulates
insurance, banking, or securities."  29 U.S.C. § 1144(b)(2)(A).
The Ninth Circuit has concluded that the Savings Clause relates
to conflict preemption, but is irrelevant to a complete
preemption analysis under § 502(a).  See, e.g., Cleghorn, 408
F.3d at 1226 n.6.

        **B.   Noetzel's Claim.**

        As a preliminary matter, Noetzel does not dispute that
HMSA's Preferred Provider Plan qualifies as an ERISA plan and
that she was a beneficiary of the Plan.  See ECF No. 12.[1]

        Noetzel's claim seeks a determination that HMSA is not
entitled to be reimbursed out of Noetzel's settlement because the

_____

        [1] In Noetzel's Reply to HMSA's Opposition to her Motion to
Remand, she argues for the first time that HMSA's brochure,
attached as Exhibit "A" to ECF No. 10, is not an ERISA plan
document.  See ECF No. 12, PageID # 190.  The Magistrate Judge
correctly declined to consider this improperly raised argument,
which Noetzel did not renew in her Reply to HMSA's Objections to
the F & R.  In any event, the court need not address this issue
while deciding the present motion because this issue goes to the
ultimate merits of Noetzel's claim and not to whether the claim
is completely preempted under ERISA § 502(a).

terms in the Plan providing for HMSA to be reimbursed out of her tort settlement are void under state law.  <u>See</u> ECF No. 1-2, PageID #s 11-15.  Noetzel asserts her claim pursuant to Haw. Rev. Stat. § 663-10 and Haw. Rev. Stat. § 431:13-103(a)(10).  <u>See</u> ECF No. 18, PageID # 422.

Haw. Rev. Stat. § 663-10(a) provides in relevant part:

> In any civil action in tort, the court, before any judgment or stipulation to dismiss the action is approved, shall determine the validity of any claim of a lien against the amount of the judgment or settlement by any person who files timely notice of the claim to the court or to the parties in the action. The judgment entered, or the order subsequent to settlement, shall include a statement of the amounts, if any, due and owing to any person determined by the court to be a holder of a valid lien and to be paid to the lienholder out of the amount of the corresponding special damages recovered by the judgment or settlement. . . . If there is a settlement before suit is filed or there is no civil action pending, then any party may petition a court of competent jurisdiction for a determination of the validity and amount of any claim of a lien.

The particular language in section 663-10(a) that Noetzel focuses on is the reference to payment to a lienholder "out of the amount of corresponding special damages recovered by the judgment or settlement." Noetzel's settlement purported to be entirely for general damages, with no mention of special damages.

Haw. Rev. Stat. § 431:13-103(a)(10) states that an insurance company commits an unfair method of competition by:

Refusing to provide or limiting coverage
available to an individual because the
individual may have a third-party claim for
recovery of damages; provided that:

(A) Where damages are recovered by judgment
or settlement of a third-party claim,
reimbursement of past benefits paid shall be
allowed pursuant to section 663-10[.]

Noetzel's invocation of Haw. Rev. Stat. § 431:13-
103(a)(10), a statute regulating unfair methods of competition by
an insurance company, is an attempt to fit her claim under the
Savings Clause in ERISA § 514(b)(2)(A).  The Savings Clause
provides:  "Except as provided in subparagraph (B), nothing in
this subchapter shall be construed to exempt or relieve any
person from any law of any State which regulates insurance,
banking, or securities."  29 U.S.C. § 1144(b)(2)(A).  As
discussed above, however, the Savings Clause in ERISA § 514 is
irrelevant to the issue of whether Noetzel's action is completely
preempted under § 502(a), the matter now before this court.  See
Cleghorn, 408 F.3d at 1226 n.6.  If Noetzel's claim is completely
preempted by § 502(a), it will not be "saved" by ERISA
§ 514(b)(2)(A), even if Haw. Rev. Stat. § 431:13-103(a)(10) is a
state law regulating insurance.

In any event, Noetzel cannot bring any claim under Haw.
Rev. Stat. § 431:13-103(a)(10).  Haw. Rev. Stat. § 431:13-107
provides, "All remedies, penalties and proceedings set forth in
this article are to be invoked solely and exclusively by the

14

commissioner."  "[T]he statute was intended as a regulatory one, enforceable by the insurance commissioner, and not one authorizing private remedies to aggrieved individuals." <u>Jenkins v. Commonwealth Land Title Ins. Co.</u>, 95 F.3d 791, 797 n.4 (9th Cir. 1996) (citing <u>Genovia v. Jackson National Life Insurance Co.</u>, 795 F. Supp. 1036, 1044-45 (D. Haw. 1992)).  <u>See</u> <u>Wittig v. Allianz, A.G.</u>, 112 Haw. 195, 206 n.5, 145 P.3d 738, 749 n.5 (Ct. App. 2006), <u>as corrected</u> (July 3, 2006) ("There is no private cause of action for violations of HRS § 431:13-103 (2005)." (citing <u>Hough v. Pacific Ins. Co., Ltd.</u>, 83 Haw. 457, 469-70, 927 P.2d 858, 870-71 (1996)); <u>see also</u> <u>Young v. Car Rental Claims, Inc.</u>, 255 F. Supp. 2d 1149, 1154 (D. Haw. 2003) ("Plaintiff cannot bring a private cause of action under HRS § 431:13-103 to effect private enforcement.").

Noetzel's Motion for Remand thus turns on whether her claim under Haw. Rev. Stat. § 663-10 is completely preempted under the test in <u>Davila</u>, and not on whether her claim under Haw. Rev. Stat. § 431:13-103(a)(10) was "saved" from preemption by ERISA § 514.

### C.   First <u>Davila</u> Prong:  Noetzel Could Have Brought Her Claim Under ERISA § 502(a).

The first <u>Davila</u> prong asks whether the "individual, at some point in time, could have brought his claim under ERISA § 502(a)."  542 U.S. at 210.

ERISA § 502(a)(1)(B) provides that a civil action may

be brought by a participant or beneficiary "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a).

The Ninth Circuit has not yet addressed the issue of whether a challenge to an ERISA plan provider's reimbursement claim falls within the scope of ERISA § 502(a)(1)(B). This court therefore looks to other circuits that have addressed the issue. See Wirth v. Aetna U.S. Healthcare, 469 F.3d 305 (3d Cir. 2006); Levine v. United Healthcare Corp., 402 F.3d 156 (3d Cir. 2005), cert. denied, 2005 WL 3144545 (U.S. Nov. 28, 2005)(No. 05-387); Arana v. Ochsner Health Plan, 338 F.3d 433 (5th Cir. 2003)(en banc); Singh v. Prudential Health Care Plan, Inc., 335 F.3d 278 (4th Cir. 2003). But see Wurtz v. Rawlings Co., LLC, 761 F.3d 232, 239-41 (2d Cir. 2014), cert. denied, 135 S.Ct. 1400 (2015) (holding that claim challenging insurer's right to reimbursement for benefits paid pursuant to ERISA plan did not fall within scope of ERISA § 502(a)). Although Arana, Singh, Levine, and Wirth did not apply the Davila test, they nonetheless provide useful guidance to the extent they addressed the exact question that the first prong of Davila requires this court to address, namely, whether a claim challenging a request for reimbursement for benefits already provided falls within the scope of § 502(a).

In Arana, the plaintiff sought a declaratory judgment

16

that he was entitled to retain tort settlement proceeds free of a
health plan's claim for reimbursement of benefits paid.  Arana
argued that a state statute prohibiting a reduction in health
insurance benefits barred the health insurer from being
reimbursed out of any tort settlement funds Arana had received.
338 F.3d at 436 & n.3.

The Fifth Circuit, sitting en banc, concluded that
Arana's claim was completely preempted by ERISA § 502(a)(1)(B)
because the plaintiff was seeking either "to recover benefits due
to him under the terms of his plan" or "to enforce his rights
under the terms of the plan."  Id. at 438.  The Fifth Circuit
explained:

> As it stands, Arana's benefits are under
> something of a cloud, for [the insurer] is
> asserting a right to be reimbursed for the
> benefits it has paid for his account.  It
> could be said, then, that although the
> benefits have already been paid, Arana has
> not fully "recovered" them because he has not
> obtained the benefits free and clear of OHP's
> claims.

Id.  The Fifth Circuit added that "one could [also] say that
Arana seeks to enforce his rights under the terms of the plan,
for he seeks to determine his entitlement to retain the benefits
based on the terms of the plan."  Id.

In Singh, members of an HMO commenced a class action
seeking to recover amounts they had paid to the HMO pursuant to
the reimbursement and subrogation terms in their ERISA plan.  335

17

F.3d at 281.  Singh, on behalf of the class members, sought a declaratory judgment that the subrogation terms were illegal under Maryland's HMO act, and a ruling requiring the return of the monies paid pursuant to the subrogation terms.  Id.

The Fourth Circuit viewed Singh's claims as claims for benefits under the terms of the governing plan and therefore completely preempted.  Id. at 290.  Notably, the Fourth Circuit treated Singh's claim as one for recovery of her "benefit that was diminished by her payment to Prudential under the unlawful subrogation term of the plan," and said that her claim was "no less a claim for recovery of a plan benefit under § 502(a) than if she were seeking recovery of a plan benefit that was denied in the first instance."  Id.  As the Fourth Circuit put it, "ERISA's complete dominion over a plan participant's claim to recover a benefit due under a lawful application of plan terms is not affected by the fortuity of when a plan term was misapplied to diminish the benefit."  Id.

The Third Circuit addressed a similar claim in Levine. The beneficiaries under an ERISA plan sued the plan providers to recover amounts the beneficiaries had paid the plan providers in accordance with the respective plans' reimbursement and subrogation clauses.  402 F.3d at 159.  The plaintiffs had used settlement proceeds from their tort cases to reimburse their insurers for medical benefits they had received.  Id.  However,

after the statute permitting an insurer to seek reimbursement was invalidated by a state court decision, the beneficiaries brought suit in state court to recover the amounts they had paid.  Id. at 159-60.

The Third Circuit held that the beneficiaries' claims were completely preempted by ERISA § 502(a)(1)(B).  Id. at 163. Relying on the reasoning of both Arana and Singh, the Third Circuit in Levine concluded that the beneficiaries' attempt to void the insurers' right to reimbursement was, for all intents and purposes, a claim seeking "to have certain health insurance claims paid under their ERISA plans."  402 F.3d at 162-63.

In Wirth, the Third Circuit revisited the issue of whether a claim challenging an insurer's right to reimbursement under an ERISA plan for benefits paid was completely preempted by ERISA § 502(a).  Wirth was a class action filed by the beneficiaries of an ERISA plan to challenge the plan administrator's assertion of a subrogation lien over settlement proceeds in a tort case.  469 F.3d at 307.  The plaintiffs asserted state law claims for unjust enrichment and alleged the violation of a state motor vehicle financial responsibility law. Id.

The Third Circuit affirmed the district court's ruling that the plaintiffs' claims for monies taken pursuant to subrogation and reimbursement provisions in their ERISA health

19

plans were claims for "benefits due" within the meaning of ERISA

section 502(a)(1)(B).  Although the Third Circuit did not mention

Davila, which by that time had been decided, the Third Circuit

applied the reasoning in Davila when it relied on Levine, Arana,

and Singh.  The Third Circuit said:

> Here, as in Levine, the actions undertaken by
> the insurer resulted in diminished benefits
> provided to the plaintiff insureds.  That the
> bills and coins used to extinguish Aetna's
> lien are not literally the same as those used
> to satisfy its obligation to cover Wirth's
> injuries is of no import--"the benefits are
> under something of a cloud."

Wirth, 469 F.3d at 309 (quoting Arana, 338 F.3d at 438).

Relying on the preceding circuit court rulings, the

district court in Cavanaugh ex rel. Cavanaugh v. Providence

Health Plan, 3:08-cv-01351-BR, at 3 (D. Or. April 14, 2009),

ruled that complete preemption barred a plaintiff's action

seeking a declaration that a plan provider had no right under

state law to assert a lien on settlement proceeds to obtain

reimbursement for medical benefits provided.  Id. at 18-19.  The

plaintiff argued that she was not seeking to clarify her rights

under the plan, but was instead seeking to have the reimbursement

terms declared void on the basis of state law.  Id. at 20-21.

Unpersuaded, the district court held that her claim was

completely preempted by § 502(a).  The court stated that it found

"the reasoning of Arana and Wirth persuasive":

Here, as in Arana and Wirth, Plaintiff's

> benefits are under a cloud because even
> though Defendant has paid some benefits,
> Plaintiff has not fully recovered them
> because she has not obtained them free and
> clear of Defendant's claims for
> reimbursement.  Accordingly, Plaintiff's
> claim is one to recover benefits under an
> ERISA plan.  Alternatively, the Court
> concludes Plaintiff seeks to enforce her
> rights under the terms of the Plan because
> she seeks a determination as to her
> entitlement to retain the benefits based on
> the terms of the Plan.  Thus, the Court
> concludes Plaintiff's claim as to the
> allegedly "less favorable" provisions of the
> Plan is completely preempted under § 1132(a)
> of ERISA, and, therefore, removal of this
> action is proper.

Id. at 24-25.

In Helfrich v. Blue Cross and Blue Shield Ass'n, 804
F.3d 1090 (10th Cir. 2015), the Tenth Circuit agreed with the
Third, Fourth, and Fifth Circuits that a claim challenging a
contractual right to reimbursement is essentially a claim for
benefits.  Although Helfrich concerned the Federal Employees
Health Benefits Act of 1959 (FEHBA) rather than ERISA, the Tenth
Circuit cited approvingly to Arana, Levine, and Singh in
rejecting the argument that a claim challenging a right to
reimbursement is somehow distinguishable from a claim for
benefits.  Id. at 1106.  The Tenth Circuit noted:

> the subrogation and reimbursement
> requirements in the Plan are tied directly to
> "payments with respect to benefits." . . .
> [A] carrier's contractual right to
> reimbursement and subrogation arises from its
> payment of benefits; and an enrollee's
> ultimate entitlement to benefit payments is

conditioned upon providing reimbursement from
any later recovery or permitting the Plan to
recover on the enrollee's behalf.  No wonder
that the reimbursement and subrogation
requirements are contained in the Plan's
"statement of benefits."  We note that
several circuit courts have interpreted an
ERISA provision authorizing civil actions to
"recover benefits due . . . under the terms
of [a] plan," 29 U.S.C. § 1132(a)(1)(B), as
encompassing suits disputing a plan's
reimbursement efforts.  See Levine v. United
Healthcare Corp., 402 F.3d 156, 163 (3d Cir.
2005) ("Where, as here, plaintiffs claim that
their ERISA plan wrongfully sought
reimbursement of previously paid health
benefits, the claim is for 'benefits due' . .
. ."); Arana v. Ochsner Health Plan, 338 F.3d
433, 437-38 (5th Cir. 2003); Singh v.
Prudential Health Care Plan, Inc., 335 F.3d
278, 291 (4th Cir. 2003).  But see Wurtz v.
Rawlings Co., 761 F.3d 232, 242 (2d Cir.
2014).

Helfrich, 804 F.3d at 1106.

This court agrees with those authorities from other
jurisdictions that hold that claims attempting to invalidate
reimbursement clauses in ERISA plans are claims that could be
brought under ERISA § 502(a)(1)(B).  Although some of the cases
discussed above preceded Davila or did not specifically discuss
it, nothing in Davila conflicts with or undercuts the reasoning
in those cases.

Noetzel could have brought her claim under ERISA
§ 502(a)(1)(B) in order to "enforce [her] rights under the terms
of the plan."  29 U.S.C. § 1132(a)(1)(B).  Noetzel, after all,
does not dispute that she is entitled to coverage or that the

22

Plan terms under which she received medical benefits are valid. Noetzel simply argues that other Plan terms, specifically those permitting reimbursement for amounts equivalent to general damages, are void under Haw. Rev. Stat. § 663-10.

Relatedly, Noetzel argues that HMSA is not entitled to reimbursement because the funds "do not correspond to special damages recovered in the subject settlement."  ECF No. 1-2, PageID # 15.  Noetzel points out that Haw. Rev. Stat. § 663-10(a) refers to the inclusion in a judgment or settlement of a statement of any amounts owed to a lienholder "to be paid to the lienholder out of the amount of the corresponding special damages reovered by the judgment or settlement."  Noetzel's settlement purportedly stated that it was for general, not special, damages. Noetzel's claim essentially seeks to enforce her right to retain the full amount of benefits she received under the Plan based on her belief that certain reimbursement terms are void and other reimbursement terms are inapplicable to her settlement.

Noetzel's claim alternatively could have been brought as a claim "to recover benefits due to [her] under the terms of [her] plan."  29 U.S.C. § 1132(a)(1)(B).  Any claim to recover benefits is completely preempted.  "[F]or the purpose of determining whether a suit is for benefits and therefore completely preempted, funds obtained from a settlement with a third-party tortfeasor cannot be strictly separated from benefits

previously paid by the plan to the beneficiary." <u>Cent. States, Se. & Sw. Areas Health & Welfare Fund v. Health Special Risk, Inc.</u>, No. 3:11-CV-2910-D, 2013 WL 2656159, at *5 (N.D. Tex. June 13, 2013), <u>aff'd sub nom.</u>, <u>Cent. States, Se. & Sw. Areas Health & Welfare Fund ex rel. Bunte v. Health Special Risk, Inc.</u>, 756 F.3d 356 (5th Cir. 2014). <u>See also</u> <u>Helfrich</u>, 804 F.3d at 1106 ("the subrogation and reimbursement requirements in the Plan are tied directly to 'payments with respect to benefits'").

What Noetzel seeks is recovery of the entire benefit provided by HMSA, as opposed to the benefit minus the amount to be reimbursed to HMSA.  Like the plaintiff in <u>Arana</u>, Noetzel's benefits are still "under something of a cloud," given HMSA's assertion of a right to recoup some of the value of the benefits paid.  "It could be said, then, that although the benefits have already been paid, [Noetzel] has not fully 'recovered' them because [she] has not obtained the benefits free and clear of [HMSA's] claims." <u>See</u> <u>Arana</u>, 338 F.3d at 438.  That HMSA had already provided the benefits to Noetzel, as opposed to having denied them in the first instance, does not change the nature of her claim, which, for all intents and purposes, seeks to establish her entitlement to ERISA benefits.

Had HMSA denied benefits to Noetzel up front, instead of first providing benefits and later seeking to "diminish" them under the Plan's reimbursement terms, a challenge by Noetzel to

that denial would undisputably have fallen within ERISA § 502(a)(1)(B).[2]  This court sees no justification, and Noetzel posits none, for reading ERISA § 502(a)(1)(B) as authorizing a claim challenging the up-front denial of benefits, but not a claim challenging the later diminution of benefits.  Admittedly, a beneficiary might sustain greater injury when an ERISA plan provider denies a benefit up front.  Such a denial could deprive the beneficiary of medical care if he or she cannot pay out of pocket or from another source.  But this risk does not change what § 502(a)(1)(B) permits.  Both an initial denial of benefits and a later diminution of benefits involve alleged repudiations of an ERISA plan benefit and may trigger a claim by a participant or beneficiary "to recover benefits due . . . under the terms of [the] plan" or "to enforce rights under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).

Congress could not have intended that § 502(a)(1)(B) be applied differently based solely on the timing of an ERISA plan provider's repudiation of a benefit.  Interpreting § 502(a)(1)(B) as providing no federal remedy when benefits are initially provided but later canceled or offset would undermine "the purpose of ERISA . . . to provide a uniform regulatory regime

_____

[2] Davila involved such a claim.  542 U.S. 200.  The plaintiffs there sued their respective HMOs for having denied coverage for certain medical treatments and services.  Id. at 204-05.

over employee benefit plans." <u>Davila</u>, 542 U.S. at 208.  Like the court in <u>Singh</u>, this court concludes that "ERISA's complete dominion over a plan participant's claim to recover a benefit due under a lawful application of plan terms is not affected by the fortuity of when a plan term was misapplied to diminish the benefit."  335 F.3d at 291.

While the discussion above has analyzed Noetzel's claim as cognizable under ERISA § 502(a)(1)(B), Noetzel could have alternatively brought her claim under ERISA § 502(a)(3).  ERISA § 502(a)(3) authorizes a beneficiary or participant "(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan[.]"  29 U.S.C. § 1132(a)(3).

Under ERISA § 502(a)(3), Noetzel could have brought a claim to enjoin HMSA from enforcing those parts of the Plan that required that HMSA be reimbursed.  Noetzel could have even asked the court to declare that the Plan's reimbursement terms were overbroad or illegal and to enforce the remaining terms of the Plan.  <u>See, e.g.</u>, <u>Elexco Land Services, Inc. v. Hennig</u>, No. 11-CV-00214 A M, 2011 WL 9368970, at *5 (W.D.N.Y. Dec. 28, 2011), <u>report and recommendation adopted</u>, No. 11-CV-214, 2012 WL 5288760 (W.D.N.Y. Oct. 23, 2012) (noting court's equitable discretion to

"blue pencil" overbroad clause).

In viewing Noetzel's claim as not completely preempted by ERISA § 502(a), the F & R relied almost exclusively on Wurtz v. Rawlings Co., LLC, 761 F.3d 232 (2d Cir. 2014).  See ECF No. 16, PageID #s 241-42.  Wurtz represents the minority view that a challenge to an ERISA plan administrator's right to subrogation or reimbursement falls outside the scope of ERISA § 502(a). While this court would not hesitate to adopt a minority position if convinced it was the better-reasoned approach, this court identifies problems that preclude the adoption of the reasoning in Wurtz.

First, Wurtz flouts the direction in Davila to examine the essence of a claim in determining whether it is completely preempted by ERISA § 502(a).  That is, Davila counsels the court not to accept claims at face value.  "[D]istinguishing between pre-empted and non-pre-empted claims based on the particular label affixed to them would elevate form over substance and allow parties to evade the pre-emptive scope of ERISA simply by relabeling their contract claims as [state law] claims."  542 U.S. at 214.  The Ninth Circuit echoes this concern:  "Artful pleading does not alter the potential for this suit to frustrate the objectives of ERISA." Cleghorn, 408 F.3d at 1226.  Wurtz focused on the language in the complaint instead of analyzing whether the plaintiff could have brought a claim under ERISA

27

§ 502(a).  The Second Circuit thus said:

> ERISA § 502(a)(1)(B) allows a plaintiff "to
> recover benefits due to him under the terms
> of his plan, to enforce his rights under the
> terms of the plan, or to clarify his rights
> to future benefits under the terms of the
> plan."  The claims in plaintiffs' complaint
> seek to do none of these things.  Plaintiffs
> do not contend that they have a right to keep
> their tort settlements "under the terms of
> [their] plan[s]"—-rather, they contend that
> they have a right to keep their tort
> settlements under N.Y. Gen. Oblig. Law
> § 5-335.

Wurtz, 761 F.3d at 242.

Focusing on how a claim is pled risks missing the
critical inquiry as to whether "an individual, at some point in
time, could have brought his claim under ERISA § 502(a)[.]"
Davila, 542 U.S. at 210 (emphasis added).  See also Fossen, 660
F.3d at 1107-08.  The Second Circuit inexplicably criticized the
district court in Wurtz for having looked behind Wurtz's pleading
and for concluding, based on the underlying allegations, that
Wurtz's claims effectively were for benefits under ERISA
§ 502(a)(1)(B).  The district court had stated that "the claims
are 'really about [plaintiffs'] right to keep the monetary
benefits received from defendants under their ERISA-governed
plans; this triggers issues concerning their rights and ability
to recover (and/or retain) benefits under the Plans, and
accordingly, brings ERISA § 502(a)(1)(B) directly into play.'"
Id. (quoting Wurtz v. Rawlings Co., LLC, 933 F. Supp. 2d 480, 495

(E.D.N.Y. 2013)).

The Second Circuit's criticism of the district court highlights another problem.  In the course of discussing the district court's analysis, the Second Circuit read the ERISA "Savings Clause" in a manner contrary to the Ninth Circuit's reading:

> This expansive interpretation ignores the fact that plaintiffs' claims are based on a state law that regulates insurance and are not based on the terms of their plans.  As a result, state law does not impermissibly expand the exclusive remedies provided by ERISA § 502(a).  Under ERISA § 514(a)-(b), state laws that "relate to" ERISA plans are expressly preempted, but not if they "regulate[ ] insurance."  29 U.S.C. § 1144(a)-(b).  Based on this "insurance saving clause," the Supreme Court has held that state statutes regulating insurance that nonetheless affect ERISA benefits are not expressly preempted, with no hint that claims under these statutes might still be completely preempted and thus unable to be adjudicated under those state laws when they do not expand the remedies available for beneficiaries for claims based on the terms of their plans.

761 F.3d at 242-43.  The Second Circuit reasoned that Wurtz's claim could not be completely preempted under § 502(a) because it was based on a state statute regulating insurance that was saved from preemption under ERISA § 514(a)-(b)'s "Savings Clause."  That is, in the Second Circuit's view it did not make sense to conclude, as the district court had, that a claim based on a statute "saved" from preemption under § 514(a)-(b) would

nonetheless be completely preempted under § 502(a).

    This was also the basis on which the Second Circuit rejected the reasoning of Arana, Singh, and Levine.  The Second Circuit concluded that "the logic of Arana, Singh, and Levine would expand complete preemption to encompass state laws that regulate insurance and that do not impermissibly expand the exclusive remedies provided by ERISA § 502(a)."  Wurtz, 761 F.3d at 244.

    This analysis in Wurtz conflicts directly with governing Ninth Circuit precedent.  In the Ninth Circuit, "[p]reemption under ERISA section 502(a) is not affected by [section 514(b)(2)(A) as a state regulation of insurance]."  Cleghorn, 408 F.3d at 1227.  Cleghorn provides:  "A state cause of action that would fall within the scope of this scheme of remedies [in § 502(a)] is preempted as conflicting with the intended exclusivity of the ERISA remedial scheme, even if those causes of action would not necessarily be preempted by section 514(a)."  Id. at 1225 (citing Davila, 542 U.S. at 214 n.4).[3]

---

    [3]  At the hearing on the motion, Noetzel pointed to Cleghorn's use of the word "conflicting" to argue that Cleghorn only concerned conflict preemption and, therefore, does not undercut Wurtz and its analysis of complete preemption.  This is incorrect.  Although the Ninth Circuit used the word "conflicting," the context makes it clear that the Ninth Circuit was talking about complete preemption:  "A state cause of action that would fall within the scope of this scheme of remedies is preempted as conflicting with the intended exclusivity of the ERISA remedial scheme, even if those causes of action would not necessarily be preempted by section 514(a)."  Cleghorn, 408 F.3d

Adopting the reasoning in <u>Wirth</u>, <u>Levine</u>, <u>Arana</u>, and

<u>Singh</u>, this court rules that the first prong of the <u>Davila</u> test

is met because Noetzel could have brought her claim under either

ERISA § 502(a)(1)(B) or ERISA § 502(a)(3).

### D.   The Second <u>Davila</u> Prong: HMSA's Actions Do Not Implicate an Independent Legal Duty.

To apply the second part of <u>Davila</u>'s complete

preemption test, the court "must ask whether or not an

'independent legal duty . . . is implicated by [the] defendant's

actions.'"  542 U.S. at 210.

This prong can be separated into two questions.  The

preliminary inquiry is whether defendant's actions implicate a

legal duty.  If so, the court examines whether that legal duty is

independent of ERISA.

This court concludes that HMSA's conduct does not

implicate a legal duty, let alone a duty independent of ERISA.

A "duty" is "[a] legal obligation that is owed or due

to another and that needs to be satisfied; that which one is

bound to do, and for which somebody else has a corresponding

right."  Black's Law Dictionary (10th ed. 2014).  A "legal duty"

---

at 1225.  This in fact echoes a statement by the Supreme Court in
<u>Davila</u>, which clearly addressed complete preemption, that "any
state-law cause of action that duplicates, supplements, or
supplants the ERISA civil enforcement remedy <u>conflicts</u> with the
clear congressional intent to make the ERISA remedy exclusive and
is therefore pre-empted."  <u>See</u> <u>Davila</u>, 542 U.S. at 209 (citing
<u>Pilot Life Ins.</u>, 481 U.S. at 54-56) (emphasis added).

31

is "[a] duty arising by contract or by operation of law; an obligation the breach of which would give a legal remedy."  Id.  A legal duty, in other words, imposes some obligation whether in contract, tort, or otherwise, that, if breached, could lead to liability under the law.

Noetzel asserts that Haw. Rev. Stat. § 663-10(a) precludes HMSA from being reimbursed because that statute refers to a lienholder's recovery from a settlement only for special damages.  Noetzel says she "has not recovered from said settlement an amount for special damages that corresponds to health insurance benefits provided by HMSA, from which Respondent HMSA may seek reimbursement of the past benefits provided in this case."  ECF No. 1-2, PageID # 14.  Whether brought under this provision or Haw. Rev. Stat. § 431:13-103(a)(10), Noetzel's claim involves no legal duty owed by HMSA to her relating to the reimbursement lien.

Indeed, the portions of section 663-10(a) that Noetzel relies on for her claim cannot be read as imposing a legal duty on any litigant.  The plain language of the provision indicates that it is a directive to the court regarding, first, the determination of a lien on a judgment or settlement and, second, what language to include in a judgment.  Section 663-10(a) provides:  "In any civil action in tort, the court, before any judgment or stipulation to dismiss the action is approved, shall

determine the validity of any claim of a lien against the amount of the judgment or settlement." (Emphasis added.)  The statute continues:  "The judgment entered, or the order subsequent to settlement, shall include a statement of the amounts, if any, due and owing to any person determined by the court to be a holder of a valid lien and to be paid to the lienholder out of the amount of the corresponding special damages recovered by the judgment or settlement." (Emphasis added.)  Finally, section 663-10(a) states:  "In determining the payment due the lienholder, the court shall deduct from the payment a reasonable sum for the costs and fees incurred by the party who brought the civil action in tort." (Emphasis added.)

The only sentence in section 663-10(a) addressed to parties states:  "If there is a settlement before suit is filed or there is no civil action pending, then any party may petition a court of competent jurisdiction for a determination of the validity and amount of any claim of a lien." This sentence authorizes a permissive action by a potential claimant; it does not impose a legal duty on any party.

Noetzel is reading section 663-10(a) as imposing a legal duty on HMSA to refrain from asserting a lien for an amount equivalent to general damages.  This reading expands the concept of legal duty beyond recognition.  It is akin to construing a statute of limitations as imposing a legal duty on an individual

33

to refrain from filing suit after a limitations period has expired.  Statutes invalidating actions that, absent the statutes, would be permitted cannot fairly be said to create legal obligations that, if breached, create liability.

Haw. Rev. Stat. § 663-10(a) is fundamentally different from the tort laws or contractual obligations that gave rise to legal duties in cases such as <u>Fossen</u>, <u>Marin General Hospital</u>, <u>Pierce</u>, and <u>Davila</u>.  <u>Fossen</u>, for example, involved a prohibition on unfair discrimination by a health insurer against similarly situated individuals when charging policy premiums.  660 F.3d at 1105, 1111.  <u>Marin General Hospital</u>, 581 F.3d at 950, <u>Pierce v. Wells Fargo Bank, N.A.</u>, 380 Fed. Appx. 635, 636 (9th Cir. 2010), and <u>Board of Trustees of Laborers Health & Welfare Trust Fund for Northern California v. Doctors Medical Center of Modesto</u>, 351 Fed. Appx. 175, 176 (9th Cir. 2009), involved legal duties imposed on defendants by contracts.  Breach of those duties exposed the defendants to liability.  <u>Davila</u> involved a tort law duty to "exercise ordinary care when making health care treatment decisions."  542 U.S. at 205, 212.  Unlike what Noetzel says is a duty imposed by section 663-10(a), breach of the duties imposed by law or contract in those cases placed the defendants at risk of being held liable.  Noetzel's claim does not allege or imply that, under section 663-10(a), HMSA owed her any legal duty the breach of which could render HMSA liable to her.

To the extent Noetzel relies on Haw. Rev. Stat. § 431:13-103(a)(10) as imposing a legal duty on HMSA, Noetzel is similarly unsuccessful.  While there are provisions in Haw. Rev. Stat. § 431:13-103(a)(10) that may be said to impose legal duties on insurance companies like HMSA, the provision Noetzel cites, Haw. Rev. Stat. § 431:13-103(a)(10)(A), imposes no duty.  That provision allows an insurer to seek reimbursement of past benefits in accordance with Haw. Rev. Stat. § 663-10.  See ECF No. 1-2, PageID # 14 (citing Haw. Rev. Stat. § 431:13-103(a)(10)(A), which provides, "Where damages are recovered by judgment or settlement of a third-party claim, reimbursement of past benefits paid shall be allowed pursuant to section 663-10.").  Haw. Rev. Stat. § 431:13-103(a)(10)(A), the provision Noetzel relies on, is purely permissive.

Nor does the Plan itself impose a legal duty on HMSA to refrain from seeking reimbursement for amounts equivalent to general damages.  The Plan, in fact, states the opposite.  The Plan authorizes HMSA to seek reimbursement for amounts in a settlement equivalent to general damages.  And even if the Plan did impose a legal duty on HMSA to refrain from seeking reimbursement in this case, such a duty could not be said to be independent of ERISA or of an ERISA plan.  See Davila, 542 U.S. at 210.  Independence is, of course, the inquiry that this court must undertake if it finds a legal duty imposed on HMSA.

35

While this court has not found the requisite legal
duty, this court cannot envision how, even assuming it found a
legal duty, the duty could possibly be independent of ERISA.

Under the second prong of Davila, "State law legal
duties are not independent of ERISA where interpretation of the
terms of the benefit plan 'forms an essential part' of the claim,
and legal liability can exist 'only because of [the defendant's]
administration of ERISA-regulated benefit plans.'"  McGill v.
Pac. Bell Tel. Co., No. CV1506323BROPLAX, 2015 WL 6039267, at *7
(C.D. Cal. Oct. 15, 2015) (quoting Davila, 542 U.S. at 213).

Interpretation of the terms of the Plan forms an
essential part of Noetzel's claim.  As discussed above, Noetzel
does not contest that HMSA has a right to reimbursement in
certain circumstances under the Plan's reimbursement terms.  She
never alleges that all of the reimbursements terms are void.
Instead, she argues that Haw. Rev. Stat. § 663-10 nullifies the
portion of the reimbursement terms providing that HMSA has the
right to seek reimbursement from general damages.  Noetzel is
content to acknowledge HMSA's right to reimbursement from any
special damages settlement because, she says, her settlement
funds "do not correspond to special damages recovered in the
subject settlement."  ECF No. 1-2, PageID # 15.  Any
determination of Noetzel's section 663-10(a) claim would require
interpretation of the Plan's terms in light of Haw. Rev. Stat.

36

§ 663-10 and the settlement terms to see whether reimbursement is permitted.

Moreover, any claim against HMSA arises only out of HMSA's administration of ERISA-regulated benefit plans. <u>See Davila</u>, 542 U.S. at 213. Noetzel would have no claim in the absence of the ERISA Plan itself. It is, after all, the Plan's authorization of reimbursement for amounts equivalent to general damages that Noetzel is challenging in her claim. Thus, even if there is a legal duty in issue here, the duty is entirely dependent on the ERISA Plan.

This court concludes that the second prong of <u>Davila</u> is met in this case.

## V.        CONCLUSION.

Because HMSA has shown that Noetzel's claim is completely preempted by ERISA § 502(a), this court rejects the Magistrate Judge's Findings & Recommendation to Grant Plaintiff Elizabeth Noetzel's Motion to Remand. Noetzel's Motion to Remand is denied.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, April 27, 2016.



/s/ Susan Oki Mollway

Susan Oki Mollway
United States District Judge

<u>Elizabeth Noetzel v. Hawaii Medical Service Association</u>, Civ. No. 15-00310 SOM/KJM; ORDER REJECTING THE MAGISTRATE JUDGE'S FINDINGS AND RECOMMENDATION TO GRANT ELIZABETH NOETZEL'S MOTION TO REMAND