IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| ELIZABETH NOETZEL, | ) | CIVIL NO. 15-00310 SOM-KJM |
| | ) | CIVIL NO. 15-00317 SOM-KJM |
| Plaintiff, | ) | |
| | ) | (consolidated) |
| vs. | ) | |
| | ) | ORDER DENYING MOTION FOR |
| HAWAII MEDICAL SERVICE | ) | RECONSIDERATION OF ORDER |
| ASSOCIATION, | ) | FILED ON APRIL 27, 2016 |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |
| | ) | |
| HAWAII MEDICAL SERVICE | ) | |
| ASSOCIATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| ELIZABETH NOETZEL, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

**ORDER DENYING MOTION FOR RECONSIDERATION
OF ORDER FILED ON APRIL 27, 2016**

**I.        INTRODUCTION.**

Elizabeth Noetzel seeks reconsideration of the order this court entered on April 27, 2016, denying Noetzel's Motion to Remand.  Noetzel asserts but does not establish manifest error of law or fact in that order.  Accordingly, the court denies the reconsideration motion.

## II.      FACTUAL BACKGROUND.

Pursuant to an ERISA plan, Hawaii Medical Service Association provided Noetzel with medical insurance coverage for injuries she had suffered in a motor vehicle accident. <u>See</u> ECF No. 1-2, PageID #s 12-13.

Noetzel filed a motor vehicle tort action in Hawaii state court, then entered into a confidential settlement agreement with the defendants in that case. <u>See id.</u>, PageID # 13.

Upon learning of the settlement, HMSA notified Noetzel of its intent to seek reimbursement from the settlement for the health benefits provided to her, pursuant to the reimbursement terms of its plan. <u>See id.</u>, PageID #s 13-14.  According to the plan's "Guide to Benefits," HMSA

> shall have a right to be reimbursed for any benefits we provide, from any recovery received from or on behalf of any third party or other source of recovery in connection with the injury or illness, including, but not limited to, proceeds from any:
>
> Settlement, judgment, or award;
>
> . . . .
>
> We shall have a first lien on such recovery proceeds, up to the amount of total benefits we pay or have paid related to the injury or illness.  You must reimburse us for any benefits paid, even if the recovery proceeds obtained (by settlement, judgment, award, insurance proceeds, or other payment):
>
> Do not specifically include medical expenses;

> Are stated to be for general damages only;
>
> Are for less than the actual loss or alleged loss suffered by you due to the injury or illness;
>
> Are obtained on your behalf by any person or entity, including your estate, legal representative, parent, or attorney;
>
> Are without any admission of liability, fault, or causation by the third party or payor.
>
> Our lien will attach to and follow such recovery proceeds even if you distribute or allow the proceeds to be distributed to another person or entity.  Our lien may be filed with the court, any third party or other source of recovery money, or any entity or person receiving payment regarding the illness or injury.

ECF No. 10-2, PageID # 158.

On July 2, 2015, Noetzel filed a Petition for Determination of Validity of Claim of Lien of HMSA in state court.  See ECF No. 1-2.  The Petition sought a determination by the state court, pursuant to Haw. Rev. Stat. §§ 431:13-1-3(a)(10) and 663-10, that HMSA was not entitled to reimbursement from the settlement proceeds because HMSA's lien sought "reimbursement from settlement funds that do not correspond to special damages recovered in the subject settlement."  See id., PageID # 15. Noetzel notes that Haw. Rev. Stat. § 663-10 refers to recovery by an insurer like HMSA of benefits paid equivalent to the special, not general, damages in a settlement.  See id., PageID # 14.

HMSA removed the action to federal court on August 7,

3

2015, asserting that this court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1331, because Noetzel's state law claims are "completely preempted" by § 502(a) of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1132(a). <u>See</u> ECF No. 1, PageID #s 3-4.

In response, Noetzel filed a Motion to Remand on August 24, 2015, arguing that her state court action implicated only state law, was not completely preempted by ERISA, and was therefore not a matter over which this court had federal subject matter jurisdiction. <u>See</u> ECF No. 6.

On January 28, 2016, the Magistrate Judge issued his Findings and Recommendation to Grant Elizabeth Noetzel's Motion to Remand. <u>See</u> ECF No. 16, PageID # 236. The F & R recommended remanding this action on the ground that, under the two-part test set forth by the United States Supreme Court in <u>Aetna Health Inc. v. Davila</u>, 542 U.S. 200, 210 (2004), Noetzel's action was not completely preempted by ERISA § 502(a). <u>See id.</u>, PageID #s 238-43.

On April 27, 2016, this court rejected the Magistrate Judge's F & R and denied Noetzel's Motion to Remand, determining that Noetzel's claim was indeed "completely preempted" by ERISA § 502(a). <u>See</u> ECF No. 23.

4

III.        **RECONSIDERATION STANDARD**.

The remand order is an interlocutory order governed by Local Rule 60.1.  Under Local Rule 60.1, a reconsideration motion may be based on "(a) Discovery of new material facts not previously available; (b) Intervening change in law; and (c) Manifest error of law or fact."  A "manifest error" is "[a]n error that is plain and indisputable, and that amounts to a complete disregard of the controlling law or the credible evidence in the record."  Black's Law Dictionary 660 (10th ed. 2014).

"Mere disagreement with a previous order is an insufficient basis for reconsideration."  White v. Sabatino, 424 F. Supp. 2d 1271, 1274 (D. Haw. 2006).  "Whether or not to grant reconsideration is committed to the sound discretion of the court."  Id. (internal quotation marks omitted).

IV.        **ANALYSIS**.

A.    **Noetzel Is Not Entitled to Reconsideration Regarding the Court's Determination that the First Prong of Davila Was Met.**

Under the two-pronged test for complete preemption set forth by the United States Supreme Court in Aetna Health Inc. v. Davila, 542 U.S. 200, 214 (2004), a claim is completely preempted if, first, "an individual, at some point in time, could have brought his claim under ERISA § 502(a)," and, second, "there is no other independent legal duty that is implicated by a

defendant's actions." 542 U.S. at 214. In the order denying the remand motion, this court determined that, because both prongs of the Davila test were met, Noetzel's claim was "completely preempted" by ERISA § 502(a). See ECF No. 23.

Noetzel seeks reconsideration of the denial of her Motion to Remand by rehashing her earlier arguments. Those arguments are no more persuasive now than they were earlier.

With regard to the first Davila prong, Noetzel insists that her claim could not have been brought under ERISA § 502(a) because it does not implicate ERISA or an ERISA plan. See ECF No. 25-1, PageID #s 514-18. According to Noetzel, her claim does not implicate ERISA because Noetzel never alleges that an ERISA plan is involved. See id., PageID # 510 ("In the Hawai'i State Court reimbursement determination Petition, Noetzel never raised or referenced any term of the HMSA plan, nor did she raise the issue that certain terms of the HMSA plan were void under Hawai'i law.").

This argument conflicts with Davila, which instructed courts not to accept claims at face value, but to examine the essence of claims in determining whether they are completely preempted by ERISA § 502(a). 542 U.S. at 214 ("[D]istinguishing between pre-empted and non-pre-empted claims based on the particular label affixed to them would elevate form over substance and allow parties to evade the pre-emptive scope of

ERISA simply by relabeling their contract claims as [state law] claims."). As the Ninth Circuit has noted, "Complete preemption removal is an exception to the otherwise applicable rule that a 'plaintiff is ordinarily entitled to remain in state court so long as its complaint does not, on its face, affirmatively allege a federal claim.'" Marin Gen. Hosp. v. Modesto & Empire Traction Co., 581 F.3d 941, 945 (9th Cir. 2009) (quoting Pascack Valley Hosp. v. Local 464A UFCW Welfare Reimbursement Plan, 388 F.3d 393, 398 (3d Cir. 2004)). "This is so because '[w]hen the federal statute completely pre-empts the state-law cause of action, a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law.'" Davila, 542 U.S. at 208 (citation omitted).

The absence in Noetzel's pleadings of any reference to an ERISA plan therefore does not mean that she could not have brought her claim under ERISA § 502(a). Noetzel cannot evade ERISA's preemptive scope by not mentioning ERISA or an ERISA plan's involvement.

Noetzel next argues that HMSA's right to reimbursement arises exclusively from Haw. Rev. Stat. § 431:13-103(a)(10)(A), so that the state trial court had no need to consider an ERISA plan's terms in determining the validity of HMSA's lien. See ECF No. 25-1, PageID # 510.

Noetzel's argument assumes that HMSA's claim for reimbursement springs entirely from the state law that addresses reimbursement claims, and that the conditions under which HMSA made the payments for which it seeks reimbursement are irrelevant.  HMSA had to have paid medical benefits to Noetzel under the terms of the ERISA plan before any court could even begin to determine whether HMSA was entitled to any reimbursement.  This court is unpersuaded that the HMSA plan is irrelevant to a reimbursement determination.  See id.

Even assuming that Noetzel is correct in arguing that HMSA's reimbursement claim may be examined exclusively under Haw. Rev. Stat. § 431:13-103(a)(10)(A), instead of implicating an ERISA plan's reimbursement terms, the first preemption prong of Davila is satisfied because Noetzel could have brought her claim to retain the medical benefits under ERISA § 502(a).

It is undisputed that Noetzel is seeking a determination of the validity of HMSA's lien.  See ECF No. 1-2. Significantly, HMSA asserted its lien pursuant to the reimbursement terms of the ERISA plan under which it had paid medical benefits to Noetzel.  See ECF No. 10, PageID # 125.  See also ECF No. 10-3, PageID # 168 ("Noetzel's contractual agreement to reimburse HMSA from any recovery from a third party created a lien upon that recovery as soon as it was created.").  As this court noted earlier, the plan's reimbursement terms stated in

8

relevant part:

> [HMSA] shall have a first lien on such
> recovery proceeds, up to the amount of total
> benefits we pay or have paid related to the
> injury or illness.  [The insured] must
> reimburse [HMSA] for any benefits paid, even
> if the recovery proceeds obtained . . . :
>
> Do not specifically include medical expenses;
>
> [or]
>
> Are stated to be for general damages only[.]

ECF No. 10-3, PageID # 162.  See also id., PageID # 167

("Pursuant to the terms in Chapter 9 of the Plan, HMSA is

entitled to reimbursement for its lien amount.").

      While Noetzel seeks to retain benefits pursuant to Haw.

Rev. Stat. § 431:13-103(a)(10)(A), HMSA's lien was asserted

pursuant to the plan's terms.  Thus, Noetzel is challenging a

lien based on an ERISA plan's terms.  Noetzel therefore could

have proceeded under ERISA § 502(a)(1)(B) with a claim to

"enforce [her] rights under the terms of the plan."  29 U.S.C.

§ 1132(a)(1)(B).  Specifically, under ERISA § 502(a)(1)(B),

Noetzel could have brought a claim asserting that HMSA's lien did

not entitle HMSA to be reimbursed for benefits paid to Noetzel

under the plan because the plan's terms permitting reimbursement

of settlement amounts equivalent to general damages are allegedly

void under Haw. Rev. Stat. § 663-10.

      This court's earlier order was not confined to

analyzing how Noetzel could have proceeded under the

"enforcement" provision of ERISA § 502(a)(1)(B).  This court's conclusion that the first Davila prong was satisfied was alternatively grounded on Noetzel's ability to seek relief under the "recovery" portion of ERISA § 502(a)(1)(B), which addresses a claim "to recover benefits due to [her] under the terms of [her] plan."  See 29 U.S.C. § 1132(a)(1)(B).  And this court noted yet another alternative:  Noetzel could have sought "to enjoin HMSA from enforcing those parts of the Plan that required that HMSA be reimbursed" under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3).  See ECF No. 23, PageID #s 471-75.  Thus, even if Noetzel showed that this court erred in concluding that she could have brought her claim under ERISA § 502(a)(1)(B) to "enforce [her] rights under the terms of the plan," Noetzel would still have to establish that this court's alternate bases for finding the first Davila prong met were manifest errors of law or fact.  Noetzel fails to do so.

In examining Noetzel's right under the "recovery" provision of ERISA § 502(a)(1)(B), this court explained:

> What Noetzel seeks is recovery of the entire benefit provided by HMSA, as opposed to the benefit minus the amount to be reimbursed to HMSA.  Like the plaintiff in Arana, Noetzel's benefits are still "under something of a cloud," given HMSA's assertion of a right to recoup some of the value of the benefits paid.  "It could be said, then, that although the benefits have already been paid, [Noetzel] has not fully 'recovered' them because [she] has not obtained the benefits free and clear of [HMSA's] claims."  See

> _Arana_, 338 F.3d at 438.  That HMSA had
> already provided the benefits to Noetzel, as
> opposed to having denied them in the first
> instance, does not change the nature of her
> claim, which, for all intents and purposes,
> seeks to establish her entitlement to ERISA
> benefits.

ECF No. 23, PageID # 472 (citing _Arana v. Ochsner Health Plan_,

338 F.3d 433 (5th Cir. 2003)(en banc)).

Noetzel disagrees that her claim could be brought to

recover "benefits" under ERISA § 502(a)(1)(B), noting that HMSA

has already paid benefits to her and that she therefore is not

seeking "recovery" of anything.  She says her benefits cannot be

"under a cloud" because "[t]he 'benefit' in this case was the

payment of claims to medical providers," not the settlement

amounts.  _See_ ECF No. 25-1, PageID # 536.

But Noetzel's disagreement is not accompanied by

citations to legal authority.  Her request for reconsideration on

this point is nothing more than mere disagreement, which is an

insufficient ground for reconsideration.  _See_ _Hele Ku KB, LLC v._

_BAC Home Loans Servicing, LP_, 873 F. Supp. 2d 1268, 1289 (D. Haw.

2012).

For example, although Noetzel disagrees with this

court's determination that a claim challenging a contractual

right to reimbursement is essentially a claim for benefits, she

does not even address the cases this court relied upon, such as

_Central States, Southeast & Southwest Areas Health & Welfare Fund_

v. Health Special Risk, Inc., No. 3:11-CV-2910-D, 2013 WL 2656159
(N.D. Tex. June 13, 2013), aff'd sub nom., Central States,
Southeast & Southwest Areas Health & Welfare Fund ex rel. Bunte
v. Health Special Risk, Inc., 756 F.3d 356 (5th Cir. 2014), and
Helfrich v. Blue Cross and Blue Shield Ass'n, 804 F.3d 1090, 1106
(10th Cir. 2015).  See ECF No. 23, PageID #s 471-72.  Both cases
recognized the link between settlement amounts and previously
paid benefits.  The district court in Health Special Risk
concluded that, "for the purpose of determining whether a suit is
for benefits and therefore completely preempted, funds obtained
from a settlement with a third-party tortfeasor cannot be
strictly separated from benefits previously paid by the plan to
the beneficiary."  2013 WL 2656159, at *5.  Likewise, in
Helfrich, the Tenth Circuit recognized that "the subrogation and
reimbursement requirements in the Plan are tied directly to
'payments with respect to benefits.'"  804 F.3d at 1106.

     Indeed, Haw. Rev. Stat. § 431:13-103(a)(10)(A) itself
can be read as equating reimbursement from a settlement award
with reimbursement of paid benefits, providing further support
for this court's conclusion.  Section 431:13-103(a)(10)(A)
provides, "Where damages are recovered by judgment or settlement
of a third-party claim, reimbursement of past benefits paid shall
be allowed pursuant to section 663-10."  This plain statutory
language indicates that the money at issue in a petition brought

pursuant to Haw. Rev. Stat. § 663-10 is "reimbursement of past benefits." "It could be said, then, that although the benefits have already been paid, Noetzel has not fully 'recovered' them because she has not obtained the benefits free and clear of HMSA's claims." See ECF No. 23, PageID # 472 (brackets and quotation marks omitted) (quoting Arana, 338 F.3d at 438).

Not only does Noetzel fail to show error in this court's conclusion that she could have brought a claim under ERISA § 502(a)(1)(B) "to recover benefits due to [her] under the terms of [her] plan," see 29 U.S.C. § 1132(a)(1)(B), she fails to even address this court's alternative conclusion that the first Davila prong is met because, under ERISA § 502(a)(3), Noetzel could have brought a claim to enjoin HMSA from enforcing those parts of the plan that required that HMSA be reimbursed. See ECF No. 23, PageID # 474.

Finally, Noetzel complains that this court's conclusion that the first Davila prong is met is based on this court's misinterpretation of two cases, Cavanaugh ex rel. Cavanaugh v. Providence Health Plan, 3:08-cv-01351-BR, at 3 (D. Or. April 14, 2009), and Wurtz v. Rawlings Co., LLC, 761 F.3d 232, 244 (2d Cir. 2014).

This court cited Cavanaugh as one of several cases holding that a claim challenging an insurer's right to reimbursement under an ERISA plan for benefits previously paid is

13

completely preempted by ERISA § 502(a).  See ECF No. 23, PageID #s 464-70.  Cavanaugh was noteworthy as an instance in which another district court in the Ninth Circuit had relied on the reasoning of cases such as Arana, but this court would have reached the same result regarding the first prong of Davila even without Cavanaugh.  Thus, the citation to or alleged misinterpretation of Cavanaugh cannot on its own justify reconsideration.

Noetzel next argues that this court erroneously rejected the reasoning in Wurtz as inconsistent with Ninth Circuit law.  See ECF No. 25-1, PageID # 511 (citing ECF No. 23, PageID # 478).  Wurtz was the primary authority cited by Noetzel in earlier proceedings for the proposition that a challenge to an ERISA plan administrator's right to subrogation or reimbursement falls outside the scope of ERISA § 502(a).  See ECF Nos. 6, 12, 18.  Noetzel notes that the Second Circuit in Wurtz claimed to be applying Ninth Circuit law as set forth in Marin General Hospital, 581 F.3d 941 (9th Cir. 2009).  See ECF No. 25-1, PageID # 524 ("The decision in Wurtz v. Rawlings Co. was based on analysis and interpretation of Ninth Circuit law; Marin Gen. Hosp. v. Modesto & Empire Traction Co.").

Noetzel's reliance on Marin fails for several reasons.  In the first place, the facts of Marin make that case a study in conflict preemption, not complete preemption.  As even the Wurtz

14

court noted, in Marin the Ninth Circuit was dealing with a reimbursement claim brought by a hospital (as a patient's assignee) against an ERISA plan administrator, but the claim was not one that could have been brought under ERISA § 502(a).  See Wurtz, 761 F.3d at 244 (citing Marin, 581 F.3d at 944-50).  The hospital was suing to enforce not the terms of an ERISA plan, but an alleged oral agreement for the administrator to pay the hospital an additional amount "not owed under the patient's ERISA plan." See Marin, 581 F.3d at 947.  At most, the hospital's claim may have "related to" an ERISA plan, but "relating to" an ERISA plan, while relevant to conflict preemption, is not the test for complete preemption, which is the subject of this court's order denying remand.

In the second place, Marin is not the sole Ninth Circuit case that addresses reimbursement claims by health insurers.  Noetzel fails to address this court's conclusion that Wurtz is inconsistent with the Ninth Circuit's decisions in Fossen v. Blue Cross & Blue Shield of Montana, Inc., 660 F.3d 1102 (9th Cir. 2011), and Cleghorn v. Blue Shield of California, 408 F.3d 1222 (9th Cir. 2005).

As this court noted in its prior order, the Second Circuit in Wurtz reasoned that Wurtz's claim could not be completely preempted under § 502(a) because it was based on a state statute regulating insurance that was saved from preemption

under ERISA § 514(a)-(b)'s "Savings Clause."  See 761 F.3d at 242-43 ("Under ERISA § 514(a)-(b), state laws that 'relate to' ERISA plans are expressly preempted, but not if they 'regulate[ ] insurance.' 29 U.S.C. § 1144(a)-(b).  Based on this 'insurance saving clause,' the Supreme Court has held that state statutes regulating insurance that nonetheless affect ERISA benefits are not expressly preempted, with no hint that claims under these statutes might still be completely preempted and thus unable to be adjudicated under those state laws when they do not expand the remedies available for beneficiaries for claims based on the terms of their plans.").  See also id. at 242 (rejecting the defendant's argument for complete preemption because it "ignores the fact that plaintiffs' claims are based on a state law that regulates insurance").  The Second Circuit explained that it was refusing to "expand complete preemption to encompass state laws that regulate insurance." Id. at 244.

     This rationale in Wurtz is directly at odds with the Ninth Circuit's holding in Cleghorn that "[p]reemption under ERISA section 502(a) is not affected by [section 514(b)(2)(A) as a state regulation of insurance]."  408 F.3d at 1227.  As this court noted in denying the remand motion, the Ninth Circuit was addressing complete preemption when it explained in Cleghorn that "[a] state cause of action that would fall within the scope of this scheme of remedies [in  § 502(a)] is preempted as

16

conflicting with the intended exclusivity of the ERISA remedial
scheme, even if those causes of action would not necessarily be
preempted by section 514(a)."  See ECF No. 23, PageID # 478.  See
Cleghorn, 408 F.3d at 1225 (citing Davila, 542 U.S. at 214 n.4).
See also Fossen, 660 F.3d at 1112 (citing holding in Davila that
complete preemption under § 502(a) is independent of express
preemption under ERISA  § 514).

Most critical for this court are the teachings in
Davila.  The plaintiffs in Davila used reasoning similar to that
advanced in Wurtz to argue that their claims were not completely
preempted.  Thus, they argued that their claims were based on a
state law "that regulates insurance, and hence that ERISA
§ 514(b)(2)(A) saves their causes of action from pre-emption (and
thereby from complete pre-emption)."  542 U.S. at 216.  The
Supreme Court rejected this argument, explaining that "even a
state law that can arguably be characterized as 'regulating
insurance' will be pre-empted if it provides a separate vehicle
to assert a claim for benefits outside of, or in addition to,
ERISA's remedial scheme."  Id. at 217-18.

In relying exclusively on the claimant's pleadings to
determine whether the claim was completely preempted, Wurtz
ignored the clear direction in Davila not to do that.  See Wurtz,
761 F.3d at 242 ("ERISA § 502(a)(1)(B) allows a plaintiff 'to
recover benefits due to him under the terms of his plan, to

enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.'  The claims in plaintiffs' complaint seek to do none of these things. Plaintiffs do not contend that they have a right to keep their tort settlements 'under the terms of [their] plan[s]'—rather, they contend that they have a right to keep their tort settlements under N.Y. Gen. Oblig. Law § 5-335.").

This court has previously explained why it decided against relying on Wurtz and instead relied on cases such as Wirth v. Aetna U.S. Healthcare, 469 F.3d 305 (3d Cir. 2006), Levine v. United Healthcare Corp., 402 F.3d 156 (3d Cir. 2005), cert. denied, 2005 WL 3144545 (U.S. Nov. 28, 2005)(No. 05-387), Arana, Singh v. Prudential Health Care Plan, Inc., 335 F.3d 278 (4th Cir. 2003), and Cavanaugh regarding the issue of whether a challenge to an ERISA plan provider's reimbursement claim falls within the scope of ERISA § 502(a).  Nothing in Noetzel's motion for reconsideration persuades this court that it manifestly erred in this regard, or in concluding that the first prong of Davila was met here.

B.   **Noetzel Is Not Entitled to Reconsideration Regarding the Court's Determination that the Second Prong of Davila Was Met.**

Under the second prong of Davila, a claim is not completely preempted by ERISA § 502(a) if the defendant's actions implicated an independent legal duty.  542 U.S. at 210.  Noetzel

18

contends that this court erred in finding that "HMSA's conduct does not implicate a legal duty, let alone a duty independent of ERISA."  ECF No. 23, PageID # 479.

Noetzel's contentions regarding legal duty are the same ones that were rejected by this court in its prior order.  See ECF No. 25-1, PageID # 512.

Noetzel again argues that "HMSA has an obligation under the law to participate in the court reimbursement determination proceeding if it seeks reimbursement from the settlement recovery."  See id., PageID # 530.  This argument fundamentally misunderstands the nature of legal duty.  A "legal duty" is an affirmative obligation imposed by contract or by operation of law, the breach of which exposes a person to liability.  See Black's Law Dictionary 615-16 (10th ed. 2014).  For example, an insurer like HMSA could face a civil penalty for knowingly filing false financial statements in violation of section 431:13-103(a)(5).  However, HMSA does not face liability if it asserts a lien for reimbursement while failing to comply with section 431:13-103(a)(10)(A) or Haw. Rev. Stat. § 663-10.  At most, any failure by HMSA to comply with section 431:13-103(a)(10)(A) or section 663-10 might cause a court not to enforce HMSA's lien. There is a fundamental difference between a party's inability to recover under a statute because it has not complied with the statute and a party's liability for having breached a duty

19

imposed by law or contract.  Only in the latter situation is a legal duty implicated.

Noetzel also fails to show that it was manifest error for this court to have concluded that, "even if there is a legal duty in issue here, the duty is entirely dependent on the ERISA Plan."  See ECF No. 23, PageID #s 484-85.

Under the second prong of Davila, "State law legal duties are not independent of ERISA where interpretation of the terms of the benefit plan 'forms an essential part' of the claim, and legal liability can exist 'only because of [the defendant's] administration of ERISA-regulated benefit plans.'"  McGill v. Pac. Bell Tel. Co., No. CV1506323BROPLAX, 2015 WL 6039267, at *7 (C.D. Cal. Oct. 15, 2015) (quoting Davila, 542 U.S. at 213)).

As discussed in both this order and the prior order, interpretation of the terms of HMSA's ERISA plan forms an essential part of Noetzel's claim, which challenges HMSA's lien seeking reimbursement under the plan's terms.  See ECF No 23, PageID #s 470-79, 484-85.

Moreover, Noetzel's claim arises entirely out of HMSA's administration of an ERISA-regulated benefit plan.  See Davila, 542 U.S. at 213.  Noetzel would have no claim in the absence of the ERISA plan itself.  It is, after all, the plan's authorization of reimbursement for amounts equivalent to general

damages that Noetzel is challenging in her claim.[1]

Noetzel has failed to show any error in this court's determination that the second prong of <u>Davila</u> was met.

### C. Noetzel Is Not Entitled to Reconsideration of This Court's Observation that Noetzel Was Attempting "To Fit Her Claim Under the Savings Clause in ERISA § 514(b)(2)(A)."

Noetzel contends that this court erred in ruling that Noetzel's Petition was "an attempt to fit her claim under the Savings Clause in ERISA § 514(b)(2)(A)." ECF No. 25-1, PageID # 513 (citing ECF No. 23, PageID # 462). This statement was not a factual finding by the court. It was an observation that Noetzel's characterization of Haw. Rev. Stat. § 431:13-103(a)(10) as a state law regulating insurance appeared to be an attempt to protect her claim from ERISA preemption by invoking the Savings Clause in ERISA § 514(b)(2)(A).

Moreover, this court is not persuaded that the observation was inaccurate. More than once in her underlying papers, Noetzel argued that "HRS § 431:13-103(a)(10) is an insurance statute that is saved from ERISA preemption pursuant to

---

[1] Because the claim in this case involves the review of the ERISA plan terms, this case differs from a case involving individual rights that exist separate and independent of an ERISA plan, such as a state law right to be free from discrimination or retaliation. <u>See, e.g.</u>, <u>Yoshimura v. Haw. Carpenters Union Local 745</u>, No. CV 15-00292 HG-RLP, 2015 WL 6126805, at *1 (D. Haw. Oct. 15, 2015) (no complete preemption of claim under Hawaii Whistleblowers' Protection Act, which provides for rights and legal duty independent of ERISA).

29 U.S.C. § 1144(b)(2)(A)." See ECF No. 18, PageID # 422; see also ECF No. 12, PageID # 184 ("[T]he Hawai'i Legislature enacted HRS § 431:13-103(a)(10) in order to make it clear to HMSA that its lien rights is controlled and regulated under the Unfair Claims Settlement Practices Act, an insurance statute that is saved from ERISA preemption pursuant to 29 USC § 1144(b)(2)(A)."). Noetzel's own words thus suggest that, in invoking Haw. Rev. Stat. § 431:13-103(a)(10)(A), rather than relying solely on Haw. Rev. Stat. § 663-10, she was attempting to shield her claim from ERISA preemption by way of the Savings Clause in ERISA § 514(b)(2)(A).

> **D.    Noetzel Is Not Entitled to Reconsideration Regarding the Court's Determination that there Is No Private Right of Action Under Haw. Rev. Stat. § 431:13-103(a)(10)(A).**

Noetzel's motion asks this court to reconsider its prior ruling that "'[t]here is no private cause of action for violations of HRS § 431:13-103 (2005).'" See ECF No. 23, PageID # 463 (citing Wittig v. Allianz, A.G., 112 Haw. 195, 206 n.5, 145 P.3d 738, 749 n.5 (Haw. Ct. App. 2006), as corrected (July 3, 2006) (citing Hough v. Pac. Ins. Co., Ltd., 83 Haw. 457, 469-70, 927 P.2d 858, 870-71 (1996)).

Noetzel says that a state trial court order entered in Olayan v. Daniels, Civil No. 15-1-2129-11 (RAN), on June 29, 2016, holds that Haw. Rev. Stat. § 431:13-103(a)(10)(A) provides for a private right of action. See ECF No. 37, PageID #s 620-26.

22

This court does not read the _Olayan_ order as warranting reconsideration by this court.  As Noetzel herself admits, this issue does not affect the issue of whether this case should be remanded.  _See_ ECF No. 25-1, PageID # 534 (submitting that "the above finding by the court is not relevant or dispositive of the issue of complete preemption").

Moreover, this court is not persuaded that it erred in concluding that section 431:13-103 contains no private right of action.

In _Olayan_, the insurer, University Health Alliance ("UHA"), asserted a lien on Olayan's settlement with a third-party tortfeasor.  UHA sought to recover medical benefits it had paid to Olayan.  _See_ ECF No. 39, PageID # 671.  Olayan challenged the lien by bringing a "Motion for Determination of Validity of Claim of Lien of University Health Alliance, Pursuant to Haw. Rev. Stat. § 431:13-103(a)(10)(A)."  _See id._

Although _Olayan_ shares certain factual similarities with this case, the _Olayan_ order notably does not address complete preemption, which is at the crux of this court's ruling denying the remand motion.  The issue raised by the parties in _Olayan_ was instead whether Haw. Rev. Stat. § 431:13-103(a)(10)(A) was preempted because it conflicted with ERISA.  _See_ ECF No. 39. The state trial court concluded, "Based on conflict preemption analysis, HRS § 431:13-103(a)(10) is saved from preemption

23

pursuant to 29 U.S.C. § 1144(b)(2)(A), in that it is a statute that regulates insurance in the State of Hawaii." Id., PageID # 671.  The distinction between complete preemption and conflict preemption is critical because, as already discussed above, whether a state law regulates insurance for the purpose of ERISA § 514(b)(2)(A) does not affect the issue of complete preemption.

In addition, this court notes that, if, as Noetzel contends, the Olayan order can be read as holding that there is a private right of action under Haw. Rev. Stat. § 431:13-103(a)(10)(A), such a holding may be irreconcilable with appellate decisions.  In Wittig, the Hawaii Intermediate Court of Appeals said, "There is no private cause of action for violations of HRS § 431:13-103 (2005)."  See 112 Haw. at 206 n.5, 145 P.3d at 749 n.5.  Wittig is not an isolated ruling.  See Hough, 83 Haw. at 469-70, 927 P.2d at 870-71; Hunt v. First Ins. Co. of Hawaii, Ltd., 82 Haw. 363, 372, 922 P.2d 976, 985 (Haw. Ct. App. 1996).  See also Young v. Car Rental Claims, Inc., 255 F. Supp. 2d 1149, 1154 (D. Haw. 2003) ("Plaintiff cannot bring a private cause of action under HRS § 431:13-103 to effect private enforcement."); Jenkins v. Commonwealth Land Title Ins. Co., 95 F.3d 791, 797 n.4 (9th Cir. 1996) ("[T]he statute was intended as a regulatory one, enforceable by the insurance commissioner, and not one authorizing private remedies to aggrieved individuals.") (citing Genovia v. Jackson National Life Insurance Co., 795 F.

Supp. 1036, 1044-45 (D. Haw. 1992)).  In determining that Noetzel did not have a private cause of action under Haw. Rev. Stat. § 431:13-103(a)(10)(A), this court was relying on these rulings, which the <u>Olayan</u> court does not address.  Notwithstanding this court's extremely high regard for the trial judge in <u>Olayan</u>, this court cannot ignore statements by Hawaii's appellate courts that there is no private right of action under Haw. Rev. Stat. § 431:13-103(a)(10)(A).

Importantly, the <u>Olayan</u> decision does not expressly state that there is a private right of action under Haw. Rev. Stat. § 431:13-103(a)(10)(A).  Noetzel apparently believes that the state trial court must have implicitly so held when it declined to dismiss the action, which Olayan brought under Haw. Rev. Stat. § 431:13-103(a)(10)(A).  While the state trial court may have implicitly held that there is a private right of action under that statute, the omission of any express ruling on that point is worth noting, especially because the order was drafted by Olayan.  Possibly, Olayan hesitated to include an explicit statement in the order out of concern about running so clearly afoul of <u>Wittig</u> and other rulings.

Not only is this court relying on Hawaii's appellate courts in declining to withdraw its ruling that section 431:13-103(a)(10)(A) does not include a private right of action, the statutory language itself supports that ruling.  Section

25

431:13-103 prohibits insurers from committing certain acts that constitute unfair methods of competition and unfair or deceptive acts or practices.  The particular subsection invoked by Olayan, section 431:13-103(a)(10)(A), authorizes insurers like HMSA to seek reimbursement of previously paid benefits from a judgment or settlement of a third-party claim in accordance with Haw. Rev. Stat. § 663-10.  Section 431:13-103(a)(10)(A) provides in full, "Where damages are recovered by judgment or settlement of a third-party claim, reimbursement of past benefits paid shall be allowed pursuant to section 663-10."  Section 431:13-103(a)(10)(A) says nothing about authorizing an insured like Olayan to assert a claim challenging an insurer's lien on the insured's judgment or settlement.  Instead, such a dispute gets resolved when a court determines under Haw. Rev. Stat. § 663-10 whether a lien holder is entitled to reimbursement for an "amount of the corresponding special damages recovered by the judgment or settlement."

The reference in section 431:13-103(a)(10)(A) to section 663-10 does not create an insured's right to bring a claim under section 431:13-103(a)(10)(A).  Statutes commonly include references to other statutes.  For example, another subsection in section 431:13-103 refers to Haw. Rev. Stat. § 325-101, which requires state agencies, health care providers, and third-party payors like an insurer to maintain the

26

confidentiality of the records of a person who has contracted a human immunodeficiency virus infection, an AIDS-related complex, or AIDS.  See Haw. Rev. Stat. § 431:13-103(a)(7)(H) (prohibiting an insurer from "[r]efusing to insure, refusing to continue to insure, or limiting the amount of coverage available to an individual because the individual refuses to consent to the release of information which is confidential as provided in section 325-101").  The reference to section 325-101 does not allow an individual who wants to bring a claim for the improper release of records under section 325-101 to assert that claim under Haw. Rev. Stat. § 431:13-103(a)(7)(H).  By the same token, the reference in section 431:13-103(a)(10)(A) to section 663-10 in no way causes a private right of action to spring into being in section 431:13-103(a)(10)(A).  This court is unpersuaded that it should retract its ruling on this point.[2]

---

[2]    This court notes that the Olayan order states that the settlement amount could not have included special damages because the settlement amount did not even cover all of Olayan's general damages.  See ECF No. 39, PageID # 672.  This court cannot help being puzzled by that particular conclusion.

In drafting that portion of the Olayan order, Olayan may have had in mind a case he cited in a memorandum.  See ECF No. 37-3, PageID # 666.  If State Farm Mutual Automobile Insurance Co. v. Dacanay, 87 Haw. 136, 952 P.2d 893 (Haw. Ct. App. 1998), is indeed the source of the statement, this court questions whether Dacanay can be fairly read to support that point.

In Dacanay, the ICA held that a "general damages only" settlement was evidence of actual general damages; the ICA did not say that the settlement conclusively established the amount

**V.      CONCLUSION.**

For the foregoing reasons, Noetzel's motion for reconsideration is denied.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, July 27, 2016.



_/s/ Susan Oki Mollway_

Susan Oki Mollway
United States District Judge

---

Elizabeth Noetzel v. Hawaii Medical Service Association, Civ. No. 15-00310 SOM-KJM; and Hawaii Medical Service Association v. Elizabeth Noetzel, Civ. No. 15-00317 SOM-KJM (consolidated cases); ORDER DENYING MOTION FOR RECONSIDERATION OF ORDER FILED ON APRIL 27, 2016.

---

of such damages.  See 87 Haw. at 137, 952 P.2d at 894.  In commenting that "the insurer should carry the burden of proving that the actual general damages suffered by its insured were less than that for which the insured settled," 87 Haw. at 142, 952 P.2d at 899, the ICA was indicating that, if the insurer showed that the actual general damages were less than the purported "general damages only" settlement, then the settlement could not have been for general damages only.

The Olayan order states the converse of the ICA's statement in Dacanay.  That is, the Olayan order assumes that proof that the actual general damages exceeded the settlement amount establishes that the settlement was entirely for general damages.  This is not a conclusion stated in or naturally flowing from Dacanay.

28